UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JENNIFER LOWDER, *administrator for the estate of* TIFFANY HELBLING,

          Plaintiff,

    v.                                                                      CAUSE NO. 3:22-CV-787 DRL

MARSHALL COUNTY SHERIFF'S DEPARTMENT *et al.*,

          Defendants.

## OPINION AND ORDER

In May 2021, Tiffany Helbling tragically passed away from pneumonia at the Marshall County Jail. Jennifer Lowder, on behalf of the Estate, alleges that the Marshall County Sheriff's Department (MCSD), its staff, and the jail's medical contractor, Quality Correctional Care (QCC), violated Ms. Helbling's constitutional rights and state law by failing to provide her adequate medical care. The MCSD defendants filed a crossclaim against QCC for breach of contract and failure to defend and indemnify. QCC initially requested summary judgment on both counts but later conceded that a triable issue of fact exists on the contract claim. Today, QCC only asks the court to grant summary judgment on the failure to defend and indemnify. The court now denies the motion.

## FACTUAL BACKGROUND

The court thoroughly recounted the facts underlying this lawsuit in its prior summary judgment order, so provides only a brief background here. *See Lowder v. Marshall Cnty. Sheriff's Dep't*, 2025 U.S. Dist. LEXIS 20568, 2-9 (N.D. Ind. Feb. 5, 2025). Law enforcement arrested Ms.

Helbing on May 18, 2021 for possessing a controlled substance, operating a motor vehicle while intoxicated, and other related charges. She was taken to the Marshall County Jail, where she was detained for five days. On the morning of May 23, after various interactions between officers and her, officers found her unresponsive in her cell. She was later pronounced dead at a local hospital. An autopsy determined that she died of acute bilateral pneumonia.

The Estate (through Jennifer Lowder) then sued MCSD, a number of its officers, QCC, and certain medical providers. Remaining after the court's prior summary judgment order are the Estate's Fourteenth Amendment and wrongful death claims against MCSD, Officer Donna Tapia, QCC, Dr. Eric Tchapchet, Nurse Mary Loftus, and Social Worker Jennifer Cordray. *See id.* at 64. MCSD filed a crossclaim against QCC for indemnification and breach of contract, which the parties and court reasonably deferred to phase two pending the court's prior ruling on the underlying claims by the Estate.

The Board of Commissioners, acting through the Sheriff, and QCC entered into a Health Care Service Contract on January 7, 2019 that governed their relationship at the time Ms. Helbling passed [24-1]. The parties agreed that "QCC shall triage all emergency health care issues arising on site" [*id.* § 3.2]. QCC was to "provide health care treatment for inmates, as deemed necessary by medical or nursing staff or as requested by the Sheriff" [*id.* § 3.3]. QCC agreed to provide certain health care personnel [*id.* § 3.4], whereas MCSD provided security [*id.* § 4.2]. The parties agreed that "QCC shall be responsible for all medical training of jail correctional personnel and shall train the personnel on a schedule approved by the Sheriff" [*id.* § 3.9].

Under their contract, "[e]ach party shall indemnify the other party against all losses arising out of any third-party proceeding and relating to this Contract" [*id.* § 8.3]. "Indemnifiable

2

Proceedings" include "any judicial, administrative, or arbitration action, suit, claim, investigation, or proceeding against the Indemnitee arising out of this Contract and relating to: (1) any breach of any representation or warranty contained in this Contract; (2) any breach or violation of any covenant or other obligation under this Contract or applicable law; or (3) any claim alleging grossly negligent act or omission or willful conduct of the other party" [*id.* § 8.1(c)]. "Indemnifiable Losses" mean "the aggregate of Losses and Litigation Expenses" [*id.* § 8.1(d)]. Litigation expenses are "any reasonable out-of-pocket expense incurred in defending an Indemnifiable Proceeding or in any related investigation or negotiation, including court filing fees, court costs, arbitration fees, witness fees, and attorneys' and other professionals' fees and disbursements" [*id.* § 8.1(f)].

The contract's insurance provisions required QCC to procure "a professional liability or medical malpractice insurance policy, a civil rights policy, [and] a comprehensive general liability policy" [*id.* § 5.4]. The policy had to include "a waiver of subrogation in favor of the County and the Sheriff" and "contain additional endorsements naming the County as additional insureds" [*id.*]. Excepted from any indemnity obligation were "Indemnifiable Losses to the extent the Indemnitee acted unlawfully, negligently, or intentionally to cause those Indemnifiable Losses" [*id.* § 8.6]. No settlement, judgment, or other final resolution has been reached in all respects yet, but the parties seek a ruling from the court on defense and indemnification.

## STANDARD

The court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a

reasonable jury could rely to find in her favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp./Nichols-Homeshield*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

In its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor is the court "obliged to research and construct legal arguments for parties[.]" *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge,* 24 F.3d at 920. The court must grant summary judgment when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

## DISCUSSION

A.  *Duty to Defend.*

QCC's summary judgment motion does not ask the court to rule on whether the company has a duty to defend MCSD. In fact, the motion barely mentions a duty to defend, and it makes no argument about why QCC doesn't owe MCSD a defense. Instead, the motion focuses entirely on QCC's duty to indemnify MCSD.

MCSD raises this omission and insists that QCC waived this argument at summary judgment. Even if QCC did not waive the argument, or merely chose not to present it, MCSD argues that QCC cannot meet its burden to show it had no duty to defend MCSD. In rebuttal,

4

QCC sees its arguments against a duty to defend and a duty to indemnify as "intertwined," with the same analysis applying, such that its points should be construed as directed to both duties. QCC concedes nonetheless that the duties are different, with the duty to defend generally broader than a duty to indemnify.

It isn't the court's job to make arguments for parties or to "scour a record to locate evidence supporting a party's argument." *Est. of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005). An "undeveloped argument constitutes waiver." *Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004); *see Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). Arguments made for the first time in reply may be properly treated as waived as well, *Hernandez v. Cook Cnty. Sheriff's Off.*, 634 F.3d 906, 913 (7th Cir. 2011), not least for a case of this age and prior development. QCC cannot expect for the court to know, much less the non-movant to know, that an argument about a specific contractual indemnification provision also applied to a disparate issue regarding its duty to defend MCSD. This is particularly true when the duty to defend and duty to indemnify don't always align. *See Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) ("Defense may be required even if there never turns out to be any liability to indemnify[.]").

The legal analysis for each duty is distinct. Indiana law allows indemnification "only if the contract language shows in clear and unequivocal terms that the obligated party knowingly and willingly agrees to such indemnification." *Mid-Am. Sound Corp. v. Ind. State Fair Comm'n (In re Ind. State Fair Litig.)*, 49 N.E.3d 545, 549 (Ind. 2016) (quotations omitted). In contrast, when deciding whether a duty to defend exists, the court looks to the underlying complaint. *Ebert v. Ill. Cas. Co.*,

188 N.E.3d 858, 865 (Ind. 2022). The duty to defend is broader. *Id.* Arguing only the narrower duty to indemnify doesn't answer that broader question. By not arguing the duty to defend except on reply, and even then only briefly, QCC failed to preserve the issue for ruling at this stage. The court denies summary judgment as to a duty to defend.

    B. *Duty to Indemnify.*

Generally, "decisions about indemnity should be postponed until the underlying liability has been established." *Lear Corp.*, 353 F.3d at 583; *accord Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995) (dismissing indemnity claim when prospective indemnitee had not been deemed liable yet); *Travelers Ins. v. Penda Corp.*, 974 F.2d 823, 833-34 (7th Cir. 1992) (directing district court to dismiss indemnity claim pending resolution of underlying case); *see also Cent. States v. Am. Int'l Grp., Inc.*, 840 F.3d 448, 451 (7th Cir. 2016) (declaration regarding "hypothetical future medical claims arising from injuries that have not yet occurred" was "clearly unripe"); *Coca-Cola Bottling Co.-Goshen v. Vendo Co.*, 455 N.E.2d 370, 373 (Ind. 1983) ("[O]ne of the elements of a claim for indemnity is that the claimant has paid or been compelled to pay a judgment recovered by the injured person."). A duty to defend "plainly presents a controversy ripe for declaratory relief," but that isn't the issue to be decided on this motion. *Sears, Roebuck & Co. v. Zurich Ins.*, 422 F.2d 587, 589 (7th Cir. 1970).

The parties acknowledge this ripeness issue. The ripeness doctrine "gives effect to Article III's Case or Controversy requirement 'by prevent[ing] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Sweeney v. Raoul*, 990 F.3d 555, 560 (7th Cir. 2021) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). In evaluating ripeness, the court considers "both the fitness of the issues for judicial decision and

6

the hardship to the parties of withholding court consideration." *Id.* (citation omitted). When a plaintiff's injury "depend[s] on so many future events that a judicial opinion would be advice about remote contingencies," ripeness presents a jurisdictional issue. *Meridian Sec. Ins. v. Sadowski*, 441 F.3d 536, 538 (7th Cir. 2006). This must be evaluated on a claim-by-claim basis such that, even if a justiciable controversy exists on the duty to defend, this will not answer the ripeness of the indemnity claim. *See, e.g., Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 200 (1983) (considering ripeness of each claim); *Wis. Right to Life State PAC v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011) (same); *see also Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1380 (11th Cir. 2019) (courts "assess ripeness on a claim-by-claim basis").

QCC argues that the issue is ripe because MCSD is claiming litigation expenses as indemnifiable loss under their contract, particularly Section 8.1. MCSD says indemnification presents a genuine triable issue; though the department doesn't directly contest ripeness, it emphasizes that there is no way to know whether the contract indemnification exclusion provision applies at this stage in litigation. Section 8.1 defines indemnifiable losses as "the aggregate of Losses and Litigation Expenses" [24-1 § 8.1(d)]. The contract defines such litigation expenses to include "any reasonable out-of-pocket defense incurred in defending an Indemnifiable Proceeding or in any related investigation or negotiation, including court filing fees, court costs, arbitration fees, witness fees, and attorneys' and other professionals' fees and disbursements" [*id.* § 8.1(f)]. MCSD's complaint seeks "costs and reasonable attorney fees it incurs in both defending this lawsuit and in prosecuting this Cross-Complaint against QCC" [47 ¶ 19]. The ongoing litigation expenses establish a tangible harm sufficient to create Article III standing. *See Crabtree v. Experian Info. Sols., Inc.*, 948 F.3d 872, 881 (7th Cir. 2020). Perhaps then,

this case presents an example of why, practically, courts often wait to decide indemnification until after a liability determination. *See Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 57 n.18 (1993) ("[R]ipeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."); *Owner-Operator Indep. Drivers Ass'n v. Fed. Motor Carrier Safety Admin.*, 656 F.3d 580, 586 (7th Cir. 2011) (prudential ripeness asks whether considerations for ripeness ask whether "the claim is fit for judicial decision and delay will cause some hardship to the parties.") (citing *Abbott Labs.*, 387 U.S. at 149).

Contract principles govern the indemnity question. Both parties cite Indiana law, and no one provides a reason to apply another law, so the court will interpret the Health Care Service Contract through the lens of Indiana law. A contract's interpretation is generally a question of law, *Song v. Iatarola*, 76 N.E.3d 926, 933 (Ind. Ct. App. 2017), controlled by the parties' intent as expressed by clear contractual language, *City of Jeffersonville v. Env't Mgmt. Corp.*, 954 N.E.2d 1000, 1008 (Ind. Ct. App. 2011). "[W]hen the terms of a contract are drafted in clear and unambiguous language, [the court] will apply the plain and ordinary meaning of that language and enforce the contract according to [its] terms." *Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 937 (Ind. 2012). No one argues that the indemnity provision is ambiguous.

QCC argues the contract contains clear language that the "Indemnitor need not indemnify the Indemnitee against Indemnifiable Losses to the extent the Indemnitee acted unlawfully, negligently, or intentionally to cause those Indemnifiable Losses" [24-1 § 8.6]. QCC asserts that, based on the Estate's allegations against MCSD and what it calls the court's "findings of fact" in its prior summary judgment order, it is clear that the Estate is pursuing claims against MCSD and its employee (Officer Donna Tapia) for their own wrongdoing—which are separate from the

8

claims that the Estate pursues against QCC. QCC contends that because of the indemnity exclusion in the contract (§ 8.6), it is not obligated to indemnify MCSD for its own wrongful conduct. MCSD clarifies that the court didn't make factual findings at summary judgment; instead the court just found that triable issues of fact remained. MCSD emphasizes that a reasonable jury could still conclude that Officer Tapia and MCSD weren't negligent and didn't act unlawfully or intentionally, so there are open factual questions that must be answered before a factfinder or court could determine whether section 8.6 of the contract applies.

MCSD is right. There hasn't been any definitive finding that the MCSD or Officer Tapia acted unlawfully, negligently, or intentionally. The court's summary judgment order only held that a reasonable jury could make those findings, not that a jury must, or that these facts are somehow binding on a jury or this proceeding, including under Rule 56(g). Similarly, the court didn't conclude that MCSD or Officer Tapia's behavior "caused" any indemnifiable losses [24-1 § 8.6]. The trial record may well be different than the summary judgment record. Because open factual questions remain, the court cannot say whether the exclusion to indemnity that QCC relies upon so heavily applies as a matter of law. For example, a reasonable jury could find the QCC defendants (Dr. Eric Tchapchet, Nurse Mary Loftus, and Social Worker Jennifer Cordray) responsible for the harm and conclude that Officer Tapia acted entirely lawfully. If that were to occur, the exclusion (§ 8.6) may well not apply and indemnity might. Nothing forecloses that finding, so the court cannot rule out indemnification as a possibility. Whether the issue may technically be ripe as a jurisdictional matter, genuine issues of material fact preclude summary judgment for QCC on the indemnity claim against it.

CONCLUSION

Accordingly, the court DENIES QCC's motion as to count 1 [79] and GRANTS its motion to withdraw the summary judgment motion as to count 2 [85]. The case will proceed to trial as scheduled.

SO ORDERED.

September 30, 2025

*s/ Damon R. Leichty*
Judge, United States District Court